# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MANUEL C.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 5398 |
| v. ) | |
| ) | Magistrate Judge |
| KILOLO KIJAKAZI, Acting ) | Maria Valdez |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Manuel C.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 16] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On July 13, 2010, Plaintiff filed a claim for DIB, alleging a disability since February 13, 2003. The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 20, 2012. On December 21, 2012, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Social Security Act. The Appeals Council denied review on April 9, 2014, and Plaintiff appealed to this Court. Finding error, this Court remanded the case on June 20, 2016.

After remand, another hearing before a second ALJ was held on December 19, 2017. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert also testified. On March 6, 2018, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's March 6, 2018 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION OF MARCH 6, 2018

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ first noted that Plaintiff last met the insured status requirements of the Act on March 31, 2009. The ALJ found at step one that Plaintiff

2

had not engaged in substantial gainful activity during the period from his alleged onset date of February 13, 2003 through his date last insured of March 31, 2009. At step two, the ALJ concluded that Plaintiff had the following severe impairments: gouty arthritis, left hip degenerative joint disease and history of avascular necrosis status post 2003 left hip replacement, mild right hip degenerative joint disease, moderate degenerative joint disease bilateral knees, left foot degenerative joint disease, mild degenerative joint disease hands, hypertension, and osteopenia. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal a Listing.

Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") during the relevant timeframe to have performed a range of sedentary work with the following additional limitations: no more than occasional balancing, stooping, crouching, and climbing of ramps and stairs; never kneel, crawl, or climb ladders, ropes or scaffolds; never work in temperature extremes; never work tasks involving extraordinary hazards such as unprotected heights and dangerous unguarded moving mechanical parts that can engage the body; never work tasks involving exposure to concentrated amounts of vibration; never perform commercial driving; no more than occasional overhead reaching and below waist reaching with the bilateral upper extremities; frequent reaching in front and laterally; and frequent use of the bilateral upper extremities for gross handling and fine fingering manipulations.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a paralegal. At step five, based upon the vocational expert's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that – through the date last insured – there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from February 13, 2003, the alleged onset date, though March 31, 2009, the date last insured.

## **DISCUSSION**

**I.   ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.   JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence… 'more than a mere scintilla.'…It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations

5

omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions…and must adequately articulate his analysis so that we can follow his reasoning."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's March 6, 2018 decision was in error for several reasons, including that: (1) the ALJ did not properly support the functional capacity finding; (2) the ALJ failed to properly assess Plaintiff's symptoms; and (3) the ALJ erred in evaluating the opinion evidence.

Pertinent to Plaintiff's first argument, in arriving at Plaintiff's RFC, the ALJ first set forth a lengthy summary of Plaintiff's own statements about his physical symptoms during the relevant time period. (R. 491-92.) The ALJ noted Plaintiff's assertions that he had been "unable to stand or walk without the use of crutches" and had "difficulty cutting food, opening cans or jars, reaching into cabinets or a pantry, sorting and filing papers, picking up coins, using a pen or pencil, and dialing a phone." (*Id.* at 491.) The ALJ also generally noted Plaintiff's reports that he had "back soreness" and was "unable to relax due to pain." (*Id.*) However, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical

7

evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 492.)

In assessing the medical evidence, the ALJ determined that the opinions of Plaintiff's treating physicians (Dr. Rhea Craigen; Dr. Emily Beamer; and Dr. Daniel Torres) were entitled to little weight because those doctors had all treated Plaintiff after his last date insured. (*Id.* at 496-97.) However, the ALJ did give credence to the opinion of an impartial medical expert – Dr. Gilberto Munoz, M.D. – who "opined that the severity of the claimant's impairments did not meet or equal any listing" and "the claimant could perform light work." (*Id.* 496.) With respect to Dr. Munoz's opinions and Plaintiff's RFC, the ALJ stated as follows:

> Upon careful consideration of Dr. Munoz's opinion, I assign his opinion considerable weight due to the consistency of his opinion with the evidence of record during the relevant time period. However, though Dr. Munoz opined that the claimant was restricted to the light level of exertion, I give some weight to the claimant's subjective complaints of pain and further restrict the claimant to a range of work at the sedentary level of exertion with postural, environmental, and manipulative limitations.

(*Id.*)

Crucially, as argued by Plaintiff, "ALJ's are not permitted to construct a 'middle ground' RFC without a proper medical basis." *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2001). Here, that is precisely what the ALJ did – she fashioned a compromise RFC by synthesizing Dr. Munoz's opinion and Plaintiff's statements about the severity of his symptoms. With respect to the fallacy of that approach, the Court finds instructive the decision in *Juanona N. v. Saul*, No. 19 C

8

4110, 2021 U.S. Dist. LEXIS 79419 (N.D. Ill. Apr. 26, 2021). In that case, the court found that the ALJ had erroneously reached a centrist RFC:

> Instead of citing evidence, the ALJ appears to have split the difference between Claimant's statement that she could barely lift a half-gallon of milk and the state-agency doctors' finding that no RFC was necessary. That was erroneous because ALJs are not permitted to construct a "middle ground" RFC without a proper medical basis…and the ALJ must explain in at least minimal form what it was that led her to find that Claimant could carry out the RFC by complying with the standards of SSR 96-8p, 1996 SSR LEXIS 5.

*Id.* at *27 (citations and internal quotations omitted). Here, like in *Juanona*, the ALJ split the difference between Plaintiff's testimony and Dr. Munoz's light-work conclusion without providing any substantive analysis.

To reiterate, the ALJ determined that Plaintiff could perform a range of work at the sedentary level. The problem is that – though vaguely referring to Plaintiff's own reports of pain – the ALJ did not specifically cite any medical evidence to support her determination that Plaintiff's functional capacity was different than what Dr. Munoz had concluded. *See Megan B. v. Saul*, No. 18 C 1836, 2020 U.S. Dist. LEXIS 101344, at *14-15 (N.D. Ill. June 10, 2020) ("The ALJ apparently believed that the RFC he chose reflected a middle ground between the two competing factions of medical opinions…But in his effort to find a consensus, the ALJ crafted an RFC that is unsupported by any medical evidence or opinion.") (citation omitted). Rather, the ALJ appears to have relied on her own lay opinion, which was impermissible. *See Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) ("[An ALJ] may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record.") (citations omitted); *Clifford v. Apfel*, 227 F. 3d 863, 870 (7th

9

Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record.").

Moreover, to the extent the ALJ found Plaintiff's statements credible, she did not provide any elaboration on how specifically Plaintiff's pain impacted his capacity to perform various tasks or why she selectively credited only some of Plaintiff's symptoms but not others. Of particular note, the ALJ did not explain why she included limitations for Plaintiff's lower extremities but not his upper extremities. As Plaintiff points out, the ALJ's failure to fully consider Plaintiff's asserted hand limitations is critical because the vocational expert testified that there would be no jobs available with an additional limitation to occasional gross handling and fine finger manipulations. (R. 553 (additional upper extremity limitations "would eliminate work altogether").)

Ultimately, in this case, the ALJ "failed to construct the requisite accurate and logical bridge from the evidence to the ALJ's 'middle ground' physical RFC." *Marianne T. v. Saul*, No. 19 C 6171, 2021 U.S. Dist. LEXIS 52725, at *13 (N.D. Ill. Mar. 22, 2021).[3] Accordingly, the Court concludes that remand is necessary. In light of that determination, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from this opinion because no error was found.

---

[3] Notably, Defendant has not provided a specific rebuttal to Plaintiff's contention that the ALJ impermissibly reached a "middle ground" RFC. Defendant does argue that the ALJ "was not required to rely on one particular medical opinion, or to adopt any opinion in its entirety." (Def.'s Memo at 14-15.) That assertion, however, does not obviate the ALJ's duty to ground the RFC in medical evidence.

10

Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken to ensure that an RFC is properly determined, Plaintiff's systems are properly assessed, and the opinion evidence is properly evaluated.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 16] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**               **ENTERED:**

**DATE:   August 17, 2021**      _____
                                **HON. MARIA VALDEZ**
                                **United States Magistrate Judge**

11